UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | DEFENDANT'S |
| Plaintiff, | ) | POSITION OF THE PARTIES |
| | ) | WITH RESPECT TO |
| vs. | ) | SENTENCING FACTORS |
| | ) | |
| Alfredo Hernandez, | ) | |
| | ) | Criminal 00-108 (DWF) |
| Defendant. | ) | |

* * *

Defendant Alfredo Hernandez, through his counsel, Daniel L. Gerdts, Esq., respectfully submits this position pleading with respect to sentencing factors.

ISSUES THAT REMAIN IN DISPUTE

The issues remaining for the Court's consideration are addressed in the following disputed paragraphs of the presentence report.

Para. 33: This paragraph was substantially changed after the original PSR objections. According to the probation officer, the changes are based on information received directly from a police agent. Despite undersigned counsel's explicit requests for disclosure of the substance of that *ex parte* communication, the probation officer has refused to provide it. This new paragraph errs in its recital of several important facts. First, it says that Defendant rented the storage locker at issue in Shakopee, Minnesota. Defendant did *not* rent the locker. Second, it states that at least twenty kilograms of cocaine were stored at the storage locker during February and March. This also is a false assertion. The report suggests there is evidence that this assertion is supported by "telephone

calls between many of the defendants, especially Alfredo Hernandez and Rogelio Gastelum-Garcia." Because the probation officer refused to identify those telephone calls, undersigned counsel took the trouble to try to find them himself. None exist. Every telephone call that has anything to do with the storage locker confirms that it was used to store furniture and other personal effects from a change of residence in which Rogelio Gastelum-Garcia was somehow involved (either himself or helping someone else). This is confirmed by the contemporaneous rental of the large U-Haul truck described in Paragraph 34, and by the many recorded telephone calls discussing the move and referencing the furniture. It also is confirmed by the police search of the storage locker, in which they recovered absolutely nothing having to do with drug-trafficking.

The rest of this paragraph describes events occurring at the Prime Rate Motel in Burnsville where couriers in a car with Arizona plates arrive and spend the night paid for with cash. Defendant has no knowledge of these events and therefore can neither object nor confirm, but the contemporaneous recorded telephone calls with Rogelio Gastelum-Garcia confirm that a shipment of drugs had arrived. It was the explicitly stated police theory on the day these events both took place (the arrival of drugs in Burnsville and the rental of the storage locker in Shakopee) that they were related. That initial theory was disproved, however, by the subsequent investigation, which confirmed the rental of a large moving truck; the discussion on recorded calls regarding furniture, the move, clothes hangers, et cetera; and the ultimate failure to make any connection between the events. The police search of the locker was the final piece of evidence confirming the two were not connected.

Para. 34: Defendant objects to this paragraph on the same grounds that it is misleading and makes false assertions of fact. For example, although it confirms the rental of the U-Haul truck and its travel between a residence in New Hope (at the residence of one of the men's girlfriends (*see*

paras. 44, 47)) and the storage locker in Shakopee, it then suggests these activities were associated with drug trafficking by inserting the false assertion that Rogelio Gastelum Garcia was making phone calls indicating he was "in the process of taking possession of a shipment of narcotics." In fact, that is a false assertion, and the observed facts indicate that he already had received the shipment of narcotics at the Prime Rate motel in Burnsville the previous afternoon, as confirmed by the recorded calls. On the 23rd, Gastelum-Garcia is heard to say in various different telephone calls that he was going to rent a truck to move some furniture, that he was still doing a "move," and that he needed some hangers – all of which confirm that he was in the process of moving property out of an apartment, *not* that he was in the process of taking possession of a shipment of narcotics. In fact, until he was done with the move, he appeared to be annoyed with the calls asking about drugs.

The specific assertion in this paragraph that Gastelum-Garcia instructed Defendant during a telephone conversation "to start calling his people" is absolutely false: No such telephone conversation exists.

The last four sentences of this paragraph make no sense, except perhaps falsely to suggest that Defendant had something to do with Gastelum-Garcia's drug conspiracy. The first sentence says that Gastelum-Garcia was followed to Defendant's house in Shakopee. That sentence is followed immediately by a reference to two recorded telephone conversations in which two separate people discuss drug-dealing with Gastelum Garcia. The suggested inference is that Gastelum-Garcia went to Defendant's house where he started calling people to talk about drugs. In fact, the probation officer glaringly omits mention of the fact that Gastelum Garcia left Defendant's house at 2:50 in the afternoon, is seen going to a park, a hotel, a Chinese restaurant, and a gas station, and is recorded on a dozen telephone calls, and does not have the referenced conversations in this paragraph until 5:30 in the afternoon – two hours and forty minutes after *leaving* Defendant's house.

Para. 45: This paragraph incorrectly states that apartment #115 at 1457 Arkwright Street was rented by Defendant and Gastelum-Garcia. As the Government knows (and as set forth in paragraph 50) Defendant rented his own apartment in Shakopee, Minnesota. If the paragraph were revised to say that Defendant's name was on the lease, Defendant would not object. In fact, it is true that Gastelum-Garcia did ask Defendant for the favor of helping him rent the apartment because Gastelum-Garcia did not have either the job or the lawful identification he needed to rent the place. Defendant had both a good job that paid $20.00/hour and proper Government-issued identification documents. Defendant helped Gastelum Garcia to rent the apartment by agreeing to be on the lease, as required by the landlord. But at no time did Defendant ever rent the apartment himself, or live in the apartment, or otherwise spend any time there, as implicitly suggested by this paragraph.

Para. 50: No objection to this paragraph, but a general objection to the probation officer's failure to include in this section concerning search warrants, a description of the search of the storage locker in Shakopee located at 1495 3rd Avenue West. Although the probation officer lists and describes the searches at a dozen different locations, no mention is made of the search at the referenced storage locker, where nothing of interest to the police was found.

Para. 66: Defendant did not object to this paragraph after the PSR was issued. After objection by the Government, this paragraph was changed to characterize Defendant as an average participant in the narcotics conspiracy that was charged in the indictment. Defendant objects to any suggestion that he played any role whatsoever in the charged conspiracy. He was not a part of the conspiracy. Defendant also specifically objects to the underlying factual assertions in this paragraph, which already have been discussed above.

Defendant's confessed guilt for his participation in the telephone offense is based on the fact that Defendant knew his friend Rogelio was a drug dealer, and he knew that all the favors he did for

him were favors that permitted him to continue to live and deal drugs in Minnesota, including interpreting and helping him to rent an apartment and a storage locker. Although the favors were themselves completely legal, Defendant nonetheless knew about Rogelio's illegal business, and rather than report it, he assisted it through his assistance to Rogelio. He did *not*, however, play any role in the overall conspiracy such as drug dealing, drug distribution, drug or money transportation, money laundering, or providing protection.

Para. 68-72: Defendant did not object to these paragraphs after the issuance of the original PSR because they correctly gave Defendant acceptance of Responsibility and did not even suggest any obstructive conduct. These paragraphs were later changed after the Government objected. Defendant now objects. It is true that Defendant returned to Mexico in 2000 without first asking permission from the pretrial services officer. He left because he received word that his father was dying. This report documents his father's death in 2004. After his father's death, Defendant voluntarily returned to the United States, and was visiting at the home of his brother in Nebraska when he was arrested. If it were Defendant's intention to obstruct justice, and if he were unaccepting of responsibility, he would certainly have remained in Mexico.

Para. 74: Defendant objects to this paragraph in its entirety. He is not responsible for any quantity of cocaine, nor did he rent any storage facility, nor was any cocaine ever stored in that facility even if he had rented it. He further asserts that he cannot be held responsible for any quantity of drugs whatsoever except perhaps for the personal use amount of marijuana found in his house.

Para. 77: Defendant was certainly *not* an "average participant" in the underlying drug conspiracy. He did not participate at all. If he is accorded any role in the conspiracy, it should be a minimal role, and he should receive a four-level reduction.

Paras. 78-79: Same objections already discussed above.

Para. 80: This offense level is incorrect for the reasons discussed above.

Para. 102: This guideline calculation is incorrect for the reasons described above.

Para. 103: This calculation of the guidelines sentence incorrectly assumes the erroneous guideline calculations already objected to above.

Para. 109: This conclusion is erroneous for the reasons already discussed.

Para. 114: Defendant moves the Court for a downward sentencing departure based on his willingness to waive resistance to deportation,

Dated: 19 May 2005

Respectfully submitted,

Brink & Gerdts, P.A.

s/ Daniel L. Gerdts

Daniel L. Gerdts (#207329)
Suite 840
401 Second Avenue South
Minneapolis, Minnesota 55401
Telephone: (612) 371-0722

ATTORNEYS FOR DEFENDANT